O. P. WOODCOCK, *Plaintiff in Error,* v. JOHN WILCOX, *Defendant in Error.*

Division A.

Opinion filed June 13, 1929.

Petition for rehearing denied July 15, 1929.

*Giles J. Patterson,* for Plaintiff in Error;

*Ralph K. Roberts* and *George C. Bedell,* for Defendant in Error.

BROWN, J.—The declaration in this case, or so much of it as is necessary for consideration here, reads as follows:

16

Plaintiff, John Wilcox, sues O. P. Woodcock for that heretofore, on towit: the 17th day of February, 1924, defendant O. P. Woodcock was engaged in the erection and construction of a certain building in the City of Jacksonville, County of Duval, and State of Florida, known as the Duval County Tubercular Hospital, *alias* Duval County Tuberculosis Hospital, and the plaintiff was in the employ of the Gilmore-Empie Company, a corporation who had contracted independently to install the plumbing and heating apparatus in said building, and while engaged in drilling a hole in the floor of said building the plaintiff was struck on the head, with great force and violence, by a timber which the defendant's agent and servant had carelessly and negligently loosened from the ceiling, by reason whereof plaintiff was then and there wounded," etc.

The defendant Woodcock demurred to the declaration upon the following grounds:

1. The declaration is vague, indefinite and uncertain in its allegations.

2. It does not appear that Defendant owed Plaintiff any duty, except to refrain from wilfully and intentionally injuring him.

3. It does not appear that Plaintiff had any legal right to be upon said premises.

4. It does not appear that Defendant violated any legal duty he owed to the Plaintiff.

5. No sufficient facts are alleged to show any liability on the part of the Defendant, for the alleged injury to the Plaintiff.

The demurrer was overruled. Defendant filed pleas of the general issue and of contributory negligence. There was verdict and judgment for plaintiff, and defendant took writ of error.

It will be observed that it appears from the declaration that plaintiff was in the employ of the company who had contracted independently to install the plumbing and heating apparatus in the building which the defendant was constructing, and that at the time he was injured the plaintiff was engaged in drilling a hole in the floor of said building, but there is no allegation that he was doing this in pursuance of his employment, or in the course of his duty under such employment, or that it was necessary to drill such hole in order to attain the objects or do the work which he had thus been employed to do, or any other allegation which would show, *prima facie* at least, that the plaintiff was rightfully in the place where he was when struck by the timber alleged to have been negligently loosened by the servant of the defendant. It is obvious that such an allegation has a vital bearing upon the question of whether the defendant's servant owed the plaintiff any duty to refrain from negligence in his work of loosening the timber, which, so far as the declaration shows, was a legitimate and proper part of the work going on in the construction of the building.

The general rule is well settled that in his declaration the plaintiff should state succinctly and with certainty every fact which is *prima facie* essential to his cause of action. He is not required to anticipate possible defenses, or to allege evidentiary matter, but he should at least set out briefly the ultimate facts which form the basis of his right of action. No absolutely essential allegation of this nature can as a general rule be imported into the declaration by mere inference or intendment, the rule being that

a pleading will generally be construed most strongly against the pleader. Shipman's Common Law Pleading, 203; Andrews' Stephens Pldg., 107-108; Chitty on Pleading, 16th ed., 236, 303-307; cases cited on page 771 2 Fla., Digest, including Kirton v. A. C. L. R. R. Co., 57 Fla. 79, 49 So. R. 1024.

As to the particular acts or omissions, constituting a violation of the duty raised by law under the facts and circumstances set forth in the declaration, the very liberal rule long since adopted by this court in personal injury cases is that it will be deemed sufficient to merely allege the particular act or omission causing the injury, coupled with an averment that it was negligently done or omitted. German-American Lumber Co. v. Brock, 55 Fla. 577, 46 So. R. 740.

But the rule is equally well settled that a declaration in an action for damages resulting from negligence should set forth the ultimate facts showing the relation between the parties out of which the duty to avoid negligence arises under the law. These facts should be so stated that the duty may appear plainly from them as alleged. Coombs v. Rice, 64 Fla. 202, 59 So. R. 958; Co-operative Sanitary Baking Co. v. Shields, 71 Fla. 110, 70 So. R. 934; Ingram-Dekle Lumber Co. v. Geiger, 71 Fla. 390, 71 So. R. 552, Ann. Cas. 1918 A. 971; Warfield v. Hepburn, 62 Fla. 409, 57 So. R. 618; 20 R. C. L., 10; Christopher C. v. Russell, 63 Fla. 191, 58 So. R. 45, Ann. Cas. 1913 C, 564, Crandall's Fla. Com. Prac., Section 109; Carson's Fla. Common Law Plead., 113.

In the case of Lookout Mountain Inn Co. v. Lea, 144 Ala. 169, 39 So. R..1017, cited by defendant in error on the question of legal liability on the facts shown by the evidence in this case, the declaration alleged that the plaintiff's intestate was "rightfully" at work in defendant's

mine, assisting defendant's contractor in the work of mining, when struck by tram cars negligently allowed to run against him by defendant's servants. The principles of substantive law set forth in the opinion in the cited case show the materiality of the allegation which was omitted from the declaration in this case, as shown by the following quotation from the opinion of the Alabama Courts:

Independently of contract one person must answer for the consequences of his negligence to another, wherever these two conditions are satisfied: (1) The circumstances must be such as to justify the inference that the second person had a legal right, derived from the first person or from some extrinsic paramount authority, to occupy the place where those events occurred which are relied upon as constituting his cause of action. (2) It must be apparent to the first person, considered as a man of ordinary powers of observation, that the position likely to be assumed by the second person in the exercise of the right so acquired, with regard to the first person himself, or some physical agency, organic or inorganic, which was under his control at the time it was brought into the condition in which it was at the time the accident happened, are such that the second person will be likely to suffer injury if the first person does not take the precautions to prevent that injury which would suggest themselves to a prudent man as being appropriate for that purpose.

We do not think the declaration either directly, or by way of facts or circumstances which would justify the inference, sufficiently alleges that the plaintiff had "a legal right to occupy the place where those events occurred which are relied upon as constituting his cause of action."

The demurrer to the declaration should, therefore, have been sustained.

The importance in this case of the question we have been discussing is shown by the evidence in the case and the charge of the court. Defendant by his evidence sought to show that the plaintiff had been warned not to work in that portion of the corridor where defendant's servants were employed in loosening and taking down the boards and timbers, which had been used in forming and supporting the concrete floor overhead, until that work was completed. Plaintiff denied this, at least in part. The learned trial judge in charging the jury said:

"Now, gentlemen, under the circumstances stated in the declaration, the defendant Woodcock was bound to use due care to protect those who by their callings were bound to be within the building under construction."

The language of this instruction was a bit too broad. This duty on the part of the defendant to use care for the protection of others depended largely upon what part of the building they were in and whether they had any business to be in that particular part of the building at the time. The defendant had as much right to construct the building as plaintiff's employer had to put in the plumbing and heating fixtures and apparatus. It may be, as the evidence indicates, that defendant, as a part of his construction work, had begun the necessary work of taking down the concrete forms in this corridor before plaintiff began his work of drilling holes in the floor. If so, plaintiff had no right to require defendant to stop taking down the forms before that work was finished so that plaintiff could drill holes in the floor. And plaintiff did not attempt to assert any such right. He did, however, begin drilling a hole in the floor of the corridor just before the last one or two concrete forms were loosened. If, as defendant's evi-

dence tended to show, plaintiff was warned not to do this, but did so anyway, in spite of such warning, and if in so doing he needlessly ·subjected himself to a danger which was obvious and which by the exercise of reasonable care he could have avoided, plaintiff would have been guilty of such contributory negligence as would bar a recovery. German-American Lumber Co. v. Hannah, 60 Fla. ·70, 53 So. R. 516. Whether plaintiff was warned, and whether the danger was obvious, were questions for the jury under the evidence. Plaintiff was not an employee of the defendant and of course the doctrine that it is the duty of the master to provide his servant with a safe place in which to work did not apply. While there was some conflict in the evidence as to whether plaintiff was warned, this was one of the issues of fact for the jury to determine, and this had a bearing on whether or not the plaintiff was rightfully at the particular place within the building which he occupied when struck and injured, as well as upon the question of contributory negligence. We think therefore, as applied to the facts of this case, that the quoted portion of the court's charge, which was not qualified elsewhere in the charge, was erroneous.

What has been above said is not in conflict with the general legal proposition contended for by defendant in error to the effect that where two or more independent contractors are working in or about a building, and any one of them is doing work in pursuance of his contract or employment which he knows or should know to be dangerous to the employees of other contractors lawfully engaged in other work in or about said building and which they are under obligations to perform, the contractor engaged in such dangerous work, and his employees, should use due care to perform such dangerous work in such a manner as not to endanger the lives or persons of the employees of such other

contractors so lawfully engaged in such other work. See Thrussell v. Handyside (1888) L. R. 20 Q. B. Div., 359; Lynch v. Ley & Co. 197 N. T. Supp. 360; Note, 38 A. L. R. 471.

It is contended by the plaintiff in error that the declaration was demurrable because it did not show with whom the plaintiff's employer, Gilmore-Empie Co., had contracted; whether with the owner, or the defendant, Woodcock. The allegation was that defendant was engaged in the construction of a certain building and that the Gilmore-Empie Company "had contracted independently" to install the plumbing and heating fixtures in such building. The allegation might well have been more specific in this respect, but we think the fair, reasonable and necessary inference and meaning which the language used affords is that Gilmore-Empie Company had either contracted directly with the owners, of that such company had contracted with some paramount authority "independently" of the defendant, and hence was not a sub-contractor under Woodcock. This allegation, however, concerns a matter of some importance and it would have been better pleading to have made it more definite. If plaintiff's employer had been working as a subcontractor under the defendant, Woodcock, somewhat different rules as to liability might be applicable. See note, 38 A. L. R., 461, 471. But as above stated, we think the fair and natural construction of the language used by the pleader is that the Gilmore-Empie Company contracted with the owner or some other dominant authority and entirely independently of Woodcock, which was sufficient to show the right of plaintiff's employer to have his men enter the building and do such work as was necessary to install the heating and plumbing fixtures. It is therefore hardly necessary to invoke the rule that while an *ambiguous* pleading when tested by demurrer should be construed most

strongly against the pleader, after judgment, in a certain class of cases, all reasonable intendments will be indulged to support such a pleading and judgment thereon. G. F. and A. Ry. Co. v. Andrews, 61 Fla. 246, 54 So. R. 461. But this rule, as we have seen, does not go so far as to authorize the appellate court, by mere conjectural implication, to import into a declaration an allegation of an essential element of the cause of action which is omitted therefrom and the declaration demurred to on that ground in the trial court. In the cited case of G. F. and A. Ry. Co. v. Andrews, the declaration did not appear to have been tested in the court below by demurrer or appropriate motion, and the only contention in the appellate court was that the judgment was void for want of jurisdiction. The rule as to all reasonable intendments being indulged to support the pleading and judgment was clearly applicable to such a case.

Because of the errors pointed out, the judgment must be reversed and the cause remanded.

Reversed and remanded.

. TERRELL, C. J., AND ELLIS, J., concur.

WHITFIELD, P. J., AND BUFORD, J., concur in the opinion and judgment.